# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL S. FRANCIS,** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 15-673 |
| **FIRSTENERGY CORP,** *as owner of dissolved subsidiaries,* **MID-ATLANTIC ENERGY DEVELOPMENT COMPANY** and **FE AEQUISITION CORP,** **FIRSTENERGY GENERATION, LLC,** *formerly known as* FIRSTENERGY GENERATION CORP. | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This is essentially a contract dispute in which plaintiff, Michael Francis ("Francis"), seeks to recover monies owed to him pursuant to a November 18, 1999 Stock Purchase Agreement (the "Agreement"). (ECF No. 1; ECF No. 1-2 (Agreement).) FirstEnergy filed a motion to compel arbitration (ECF Nos. 12-13), and after Francis amended his complaint to add an unjust enrichment claim, filed an amended motion to compel arbitration (ECF No. 23-24). Francis filed responses in opposition to both motions. (ECF Nos. 18 and 30.) The court held a conference on July 15, 2015, about preliminary matters, at which time all discovery was stayed until further order of the court, and the parties were excused from their ADR obligations. For the reasons set forth below, the motions to compel arbitration will be granted.

## I. Factual Background

### A. The Allegations of the Complaint(s)

In his complaint, Francis asserts four claims: (1) "injunction & spoliation remedy;" (2) intentional interference with contract; (3) negligent interference with contract; and (4) breach of contract. (ECF No. 1.) Francis' amended complaint is a two-page document that adds a fifth cause of action for unjust enrichment. (ECF No. 20.)

In short, Francis alleges that under a November 18, 1999 Stock Purchase Agreement (the "Agreement"), he was entitled to a "Residual Value Payment" for certain power plant equipment (the "Project Equipment") on the fifteenth anniversary of the Agreement's execution (i.e., November 18, 2014). (ECF No. 1 ¶ 10.) At the time the Agreement was signed, the Project Equipment was valued at $78,400,000. (ECF No. 1 ¶ 16.) Francis contends that the Project Equipment was installed at a power plant in Defiance, Ohio, which was sold by FirstEnergy Corporation ("FirstEnergy") to Richland-Stryker Generation, LLC on October 19, 2011. (ECF No. 1 ¶¶ 10-23.) Under the Agreement, because the Project Equipment was sold more than one year before the fifteen-year anniversary of the Agreement, the Residual Value of the Project Equipment is the fair market value of "equipment of the same model, type, and manufacturer as the Project Equipment." (ECF No. 1-2 at 4 (Agreement § 1.4(a)(ii)).)

Francis asked FirstEnergy for a list of the "model, type, and manufacturer of each item of Project Equipment" and for the sales price of the equipment in 2011 so that he could determine the fair market value of the equipment, but FirstEnergy has been unable, or unwilling, to provide that information to him. (ECF No. 1 ¶¶ 25-26.) Under the Agreement, if Francis and FirstEnergy cannot agree on the fair market value of the Project Equipment, then independent

appraisers are to be hired to resolve the dispute, according to a multi-step process set forth explicitly in the agreement. (ECF No. 1-5 at 11 (Agreement § 1.4(a)(ii)(A)-(C)).)

There is apparently no dispute that Francis is entitled to some payment under the Agreement, but there is a dispute about the amount of money he is owed. (ECF No. 13 at 1.) Francis claims that because FirstEnergy destroyed the documents that would allow the equipment to be valued, it is impossible for him to determine the fair market value of the Project Equipment and "pursu[e] his contractual remedy" of being paid the Residual Value of the equipment on the fifteenth anniversary of the Agreement. (ECF No. 1 ¶ 33.) Francis asks that, as a remedy, "the beginning appraisal point [be] the sum of $78,400,000" when assessing the fair market value of the equipment. (ECF No. 1 at 9, 12.)

### B. The Motion(s) to Compel Arbitration

FirstEnergy filed a motion to compel arbitration relying upon section 6.5 of the Agreement, which reads, in part: "Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." (ECF No. 13 at 2, ECF No. 24 at 5; ECF No. 1-2 at 17 (Agreement § 6.5 (the "Arbitration Clause")).) According to FirstEnergy, none of the five claims asserted by Francis "could exist without the Agreement," and therefore, all fall within the scope of the Agreement's arbitration clause. (ECF No. 13 at 5; ECF No. 24 at 5.)

Francis advances three arguments in opposition to the motion to compel arbitration. First, he argues that the Agreement's Arbitration Clause does not apply to requests for equitable relief. (ECF No. 18 at 3-4; ECF No. 30 at 3-5.) Second, he argues that the Arbitration Clause does not apply because he "could never have contemplated such tortious

3

conduct on the part of the Defendants [i.e., destruction of the valuation documents] when entering into the agreement." (ECF No. 18 at 4-5; ECF No. 30 at 5-6.) Third, he argues that the Arbitration Clause is unconscionable because it was "part of [a] plan" to destroy the documents Francis needed in order to determine the fair market value of the Project Equipment, thus preventing a "meaningful appraisal with the purpose of preventing his full compensation." (ECF No. 18 at 5; ECF No. 30 at 6.)

## II. Legal Standards

### A. Choice of Law

The Agreement states that "all matters of construction, validity, and performance, shall be governed by and construed in accordance with the internal substantive laws of the State of Ohio, without regard to principles of conflict of laws." (ECF No. 1-2 at 17 (Agreement § 6.5).) As a court sitting in diversity, this court is to apply federal procedural law and state substantive law. Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996). FirstEnergy's motion to compel arbitration raises questions of federal arbitration law, questions of state contract law, and procedural matters. In their briefing, the parties rely upon Pennsylvania, Ohio, and federal law, without discussing why a particular law should apply in a particular circumstance.

As indicated in the legal authorities discussed below, there is no articulable difference in the potentially applicable laws, thus avoiding the possibility for conflict, and the risk that different results could be reached depending upon what law this court applies. Federal law applies to many of the issues raised by FirstEnergy's motion to compel arbitration, and where state law controls, the result would not differ if Pennsylvania or Ohio law were applied.

B. **Generally-Applicable Principles of Arbitration Law**

The Federal Arbitration Act (the "FAA") "was enacted in 1925 in response to widespread judicial hostility to arbitration agreements" and with the "principal purpose" of "ensuring that private arbitration agreements are enforced according to their terms." AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1745 (2011). The FAA reflects a "'liberal federal policy favoring arbitration'" and the "'fundamental principle that arbitration is a matter of contract.'" Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); see Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63 (2010). Accordingly, "courts must place arbitration agreements on an equal footing with other contracts…and enforce them according to their terms." AT&T Mobility, 131 S.Ct. at 1746. "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." AT & T Techs., Inc. v. Comm'n Workers of Am., 475 U.S. 643, 650 (1986); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

C. **Unconscionability**

The Supreme Court has instructed that, in determining the enforceability of arbitration agreements, federal courts "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 983, 944 (1995). "Thus, generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." Gay v. Creditinform, 511 F.3d 369, 388 (3d Cir. 2007); Cooper v. MRM Investment Co., 367 F.3d 493, 498 (6th Cir. 2004); Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002).

5

Where a party challenges the validity of an arbitration agreement on the ground that it is unconscionable, a threshold question of arbitrability is presented, which must be decided by the court, before arbitration can be compelled. Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 70-71 (2010). Federal courts are to apply state contract law, to the extent that it does not conflict with the FAA, to determine whether an arbitration agreement is unconscionable. AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1746-47, 1753 (2011). Nevertheless, "[w]hile ambiguities in the language of the agreement should be resolved in favor of arbitration, [courts] do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated. Arbitration under the FAA is a matter of consent, not coercion." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002).

To prove unconscionability under Pennsylvania law, the party challenging the provision bears the burden of proving that the contract was both procedurally and substantively unconscionable. Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 230 (3d Cir. 2012); see Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999). A contract is procedurally unconscionable where "there was a lack of meaningful choice in the acceptance of the challenged provision." Quilloin, 673 F.3d at 235 (citing Salley v. Option One Mortgage Corp., 592 Pa. 323, 925 A.2d 115, 119 (2007)). Courts consider factors such as the take-it-or-leave-it nature of the arbitration agreement, the bargaining power of the contracting parties, and the degree of economic compulsion on the party signing the agreement. Id. at 235-36. An arbitration agreement is substantively unconscionable where it is "unreasonably or grossly favorable to one side." Harris, 183 F.3d at 181. An arbitration agreement cannot be

6

substantively unconscionable if it "does not alter or limit the rights and remedies available to [a] party in the arbitral forum" Edwards v. HOVENSA, LLC, 497 F.3d 355, 364 (3d Cir. 2007).

To demonstrate that an arbitration clause is unconscionable under Ohio law, the party asserting unconscionability must prove that the clause is both substantively and procedurally unconscionable. Hayes v. Oakridge Home, 908 N.E.2d 408, 412-15 (Ohio 2009). Unconscionability consists of both an absence of meaningful choice for the party opposing enforceability of the agreement (procedural unconscionability), combined with contract terms that are unreasonably favorable to the other party (substantive unconscionability). Id. To determine whether an arbitration clause is procedurally unconscionable, courts have considered factors such as whether: (1) the arbitration clause was presented on a "take-it-or-leave-it basis;" (2) a disparity in bargaining power exists between the parties; (3) the arbitration clause was hidden in small print within the document; and (4) one of the parties could unilaterally modify the agreement. Stachurski v. DirecTV, Inc., 642 F. Supp. 2d 758, 767 (N.D. Ohio 2009). To determine whether an arbitration clause is substantively unconscionable, a court must consider the terms of the clause and whether they are commercially reasonable. Id. at 770. Because the Supreme Court of Ohio has not adopted a "bright-line set of factors" to determine substantive unconscionability, "factors to be considered vary with the content of the agreement at issue." Id. Any claim that an arbitration clause is unconscionable because it limits the remedies available to a party is for the arbitrator to decide in the first instance. Taylor Bldg. Corp. of Am. v. Benfield, 884 N.E.2d 12, 28 (Ohio 2008).

D. **Arbitrability**

Because the FAA is "at bottom a policy guaranteeing the enforcement of private contractual arrangements," courts must first look to whether the parties agreed to arbitrate a dispute to determine the scope of the agreement. Waffle House, 534 U.S. at 294 (citing Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 625 (1985)). "It is well settled in both commercial and labor cases that whether parties have agreed to 'submit a particular dispute to arbitration' is typically an 'issue for judicial determination.'" Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (additional citations omitted)).

When considering a motion to compel arbitration under the FAA, a court has four tasks: (1) it must determine whether the parties agreed to arbitrate; (2) it must determine the scope of the arbitration agreement; (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and (4) if the court concludes that some, but not all, the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. Fazio v. Lehman Bros., Inc., 340 F.3d 386, 395 (6th Cir. 2003); Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000). The first two tasks are also described as determining whether a dispute is "arbitrable," i.e., a valid arbitration agreement exists and the specific dispute falls within the scope of the agreement. Hergenreder v. Bickford Sr. Living Grp., LLC, 656 F.3d 411, 415-16 (6th Cir. 2011). The Court of Appeals for the Third Circuit articulates the issue of arbitrability as follows: "[T]he threshold questions a district court must answer before compelling or enjoining arbitration are these: (1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?" John

Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998). "In conducting this limited review, the court must apply ordinary contractual principles, with a healthy regard for the strong federal policy in favor of arbitration." Id. To determine whether a dispute falls within the scope of an arbitration agreement, a court is directed to ask whether the action could be maintained without reference to the contract or relationship at issue." Fazio, 340 F.3d at 395.

## III. Discussion

### A. Unconscionability

Francis contends that the Arbitration Clause is unconscionable because it would "effectively deny Mr. Francis access to contractual appraisal because the documents are destroyed." (ECF No. 18 at 5; ECF No. 30 at 6.) According to Francis, the Arbitration Clause was (presumably from its inception in 1999) part of a fraudulent plan to destroy valuation documents (in 2011) in order to prevent Francis (in 2015) from being fully compensated for the Residual Value of the Project Equipment. (Id.) Francis' allegations fail to rise to the level of establishing unconscionability under Pennsylvania or Ohio law.

To demonstrate that an arbitration clause is unenforceable, Francis must prove both procedural and substantive unconscionability. Quilloin, 673 F.3d at 230; see Harris, 183 F.3d at 181; Hayes, 908 N.E.2d at 412-15. A contract is procedurally unconscionable where "there was a lack of meaningful choice in the acceptance of the challenged provision" and courts consider the take-it-or-leave-it nature of the arbitration agreement, the bargaining power of the contracting parties, the degree of economic compulsion on the party signing the agreement, whether the arbitration clause was hidden in small print, and whether one of the parties could unilaterally modify the agreement  Quilloin, 673 F.3d at 235-36; Stachurski, 642 F.Supp.2d at

767. An arbitration agreement is substantively unconscionable where it is "unreasonably or grossly favorable to one side" or commercially unreasonable. Harris, 183 F.3d at 181.

Under Pennsylvania law, an arbitration agreement cannot be substantively unconscionable if it "does not alter or limit the rights and remedies available to [a] party in the arbitral forum...." HOVENSA, 497 F.3d at 364; Stachurski, 642 F.Supp.2d at 770. Ohio law suggests that such a challenge must be made to the arbitrator; it does not prevent enforcement of an arbitration clause. Taylor Bldg, 884 N.E.2d at 28.

Although Francis' allegations are sparse with respect to this challenge, he appears to contend that his rights and remedies are altered by the Arbitration Clause because he is denied his contractual right to an appraisal because FirstEnergy destroyed the valuation documents. (ECF No. 18 at 5; ECF No. 30 at 6.) Under Ohio law, such an argument would be made to the arbitrator. Under Pennsylvania law, this would be a substantive unconscionability argument. The argument is without merit.

The Arbitration Clause has no substantive effect on Francis' right to invoke the appraisal process or to collect a Residual Value Payment under the Agreement. He is entitled to the payment under section 1.4 of the Agreement, and if a consensus on the amount of the payment cannot be reached through the appraisal process, then the matter will be resolved in arbitration. It is yet to be determined whether FirstEnergy's alleged destruction of valuation documents has any impact on the amount of Francis' Residual Value Payment. But the Arbitration Clause has no effect on that issue. Whether in a court or at arbitration, Francis can present his arguments about the proper sanction to be imposed upon FirstEnergy for allegedly destroying the valuation documents. An arbitrator could agree with Francis and accept his suggestion that the value of the Program Equipment start at nearly $80,000,000, and impose the

10

burden upon FirstEnergy to prove any appropriate deductions or depreciation. A court could reach that conclusion as well. The arbitrator and a court could also entirely reject Francis' position. Regardless of which scenario occurs, Francis' substantive rights and remedies under the Agreement are in no way affected by the forum in which the argument will be made. As discussed below, as a matter of arbitration law, an arbitrator has full authority to consider FirstEnergy's alleged destruction of documents and award whatever equitable relief that is deemed appropriate, including sanctions and adverse inferences. Francis' rights and remedies are not affected in any way by the Arbitration Clause. The Arbitration Clause is, therefore, not substantively unconscionable for the reason advanced by Francis.

Because Francis' allegations cannot establish substantive unconscionability, procedural unconscionability is irrelevant. In any event, it appears that Francis contends that the Arbitration Clause is procedurally unconscionable because it was included in the Agreement as a vehicle intended to defraud him of his right to a Residual Value Payment. Francis presents no evidence that the Arbitration Clause was presented as a take-it-or-leave-it proposition, he lacked choice or bargaining power in executing the Agreement, or he was subject to economic compulsion. The Agreement contradicts the suggestion that it was anything other than an arms' length, commercial transaction between parties that were both represented by counsel. (ECF No. 105 at 16 (Agreement § 6.2 (Notices)).) The Arbitration Clause was not hidden in small print. The Agreement does not reflect that FirstEnergy had the power to unilaterally modify the Agreement. Under these circumstances, Francis failed to establish that the Arbitration Clause is procedurally unconscionable by advancing his theory that it was the first step in a scheme to deprive him of a Residual Value Payment.

11

Francis failed to meet his burden to prove that the Arbitration Clause is substantively and procedurally unconscionable, and it is therefore valid and enforceable.

**B. <u>Arbitrability</u>**

Because the Agreement, and its Arbitration Clause are valid, the court must determine whether the dispute between Francis and FirstEnergy about the Residual Value Payment falls within the language and scope of that clause. Francis acknowledges in his complaint that this dispute, and the remedy that he seeks, are contractual. In the complaint Francis avers that FirstEnergy is preventing him from "pursuing his contractual remedy" and from "performing under §1.4 of the [Agreement]." (ECF No. 1 ¶¶ 36, 42, 44, and 48.) In the amended complaint, Francis alleges that FirstEnergy is "thwarting [his] ability to be compensated under the Residual Value provision" of the Agreement. (ECF No. 20 ¶ 52.) An action to recover a payment that was promised in a written contract cannot be characterized as anything other than a dispute "arising out of or related to" that contract. (ECF No. 1-5 at 17 (Agreement § 6.5).) None of the arguments Francis advances in an attempt to avoid the Arbitration Clause can overcome his own admissions and the plain language of the Agreement. The court will, nevertheless, address each in turn below.

### 1) Equitable Relief

Francis contends that the Arbitration Clause does not apply because he seeks equitable relief. According to Francis, because the Agreement contains a separate provision, entitled "Injunctive Relief," "the parties clearly did not want to subject claims for equitable relief to the arbitration process." (ECF No. 18 at 3; ECF No. 30 at 4.) The provision to which Francis refers is section 6.1, which states:

> In the event of a breach of this Agreement for which monetary damages are inadequate, the non-breaching party shall be entitled to all remedies available under applicable law or in equity, including specific performance and other injunctive relief and, in the event that the non-breaching party seeks an equitable remedy, the breaching party expressly waives and shall not raise in any action or proceeding, the defense that an adequate remedy at law exists.

(ECF No. 1-2 at 15 (Agreement § 6.1).) This provision appears in the same Article of the Agreement, entitled "Miscellaneous," as does the Arbitration Clause. (Id.)

Francis claims that if he is compelled to arbitrate his claims, he will "be afforded no meaningful remedy for [FirstEnergy's] spoliation of evidence" because "[a]rbitration is not meant to address equitable relief." (ECF No. 18 at 4; ECF No. 30 at 5.) The Agreement directly and explicitly contradicts Francis' argument, and the legal authority cited by Francis does not stand for the proposition that arbitration clauses do not apply when equitable relief is sought.

Subsection 6.5(g) of the Agreement, which appears in the "Dispute Resolution; Choice of Law" section of the Agreement along with the Arbitration Clause, states that "[t]he arbitrator(s) shall be entitled to award injunctive relief." (ECF No. 1-2 at 18 (Agreement § 6.5(g).) Subsection 6.5(d) indicates that "[a]ny provisional remedy that would be available from a court of law shall be available from the arbitrator… pending the arbitration hearing," such as, presumably, a temporary restraining order, preliminary injunction, litigation hold, or stand-still

13

order. (Id. (Agreement § 6.5(d).) These provisions indicate that the parties intended to make equitable relief available in arbitration under the Agreement.

Section 6.1, on which Francis relies, does not indicate to the contrary. That section is silent with respect to the forum in which equitable relief can be sought, and instead speaks to the kinds of remedies available and defenses that can be asserted. A section that is silent with respect to the forum in which a dispute may be resolved, cannot override clear statements made in section 6.5 and subsections 6.5(d) and (g) that equitable relief would be available in arbitration.

The two decisions cited by Francis in support of his contention that the Arbitration Clause does not apply because he seeks equitable relief, Green Tree Financial Corporation v. Bazzle, 539 U.S. 444 (2003) and Granite Rock Company v. International Brotherhood of Teamsters, 561 U.S. 287 (2010), do not stand for that proposition. (ECF No. 28 at 4; ECF No. 30 at 5.) The court is aware of no limitation on an arbitrator's fashioning of equitable relief, barring a contractual provision prohibiting it. To the contrary, Rule 47(a) of the Commercial Arbitration Rules of the American Arbitration Association, which the Arbitration Clause states will apply, provides that "the arbitrator my grant any remedy or relief that the arbitrator deems just and equitable…including, but not limited to, specific performance of a contract."

Finally, Francis' contention that the Arbitration Clause effectively denies him relief for FirstEnergy's alleged spoliation of the documents needed to determine the fair market value of the Project Equipment is not well-founded. There is nothing in the Agreement preventing Francis from apprising the arbitrator of FirstEnergy's alleged spoliation of the documents, and asking for the same spoliation penalty that he asks for in Count I of his

complaint, i.e., that the valuation of the Project Equipment begin at $78,400,000. Francis is denied no kind of relief as a result of the Arbitration Clause.

Because Francis is able to seek equitable relief through arbitration, his pleading of a claim for "Injunction & Spoliation Remedy" in Count I does not foreclose enforcement of the Arbitration Clause.

### 2) **Tortious Conduct not Contemplated**

Francis argues that the Arbitration Clause cannot be enforced because Francis could not have contemplated at the time of contracting that FirstEnergy would ensure that the Agreement was written so that it could destroy valuation documents about the Project Equipment and then refuse to fully compensate Francis because the documents no longer exist. (ECF No. 18 at 4; ECF No. 30 at 5.) Francis does not present this as a defense to contract formation, but as a reason why this particular dispute should not be subject to the arbitration.

To reiterate, the present dispute concerns Francis' attempt to collect the Residual Value Payment provided for under section 1.4 of the Agreement. Francis alleges that FirstEnergy has "thwarted" his ability to collect that payment by destroying documents needed to evaluate the fair market value of the Project Equipment. The documents have no inherent value, and Francis does not claim to have a possessory interest in them. Instead, he is complaining that FirstEnergy destroyed them as a way to prevent Francis from valuing the Project Equipment and obtaining his Residual Value Payment. Francis contends that this matter is not subject to arbitration because he never could have anticipated that FirstEnergy would destroy the valuation documents.

Whether a particular cause of action, or factual scenario, is "contemplated" at the time an arbitration clause is signed is not the test of arbitrability. Courts are instead directed to ask whether the action falls within the scope of the agreement to arbitrate. In this case, Francis and First Energy agreed to arbitration "[a]ny controversy or claim arising out of or relating to this Agreement." (ECF No. 105 at 17 (Agreement § 6.5).) Francis' prayers for relief all are explicitly based upon the Agreement, and his right to receive a Residual Value Payment exists only because of the Agreement. (ECF No. 1 ¶¶ 36, 42, 44, and 48; ECF No. 20 ¶ 52.) There can be no doubt that this dispute arises out of and relates to the Agreement.

Francis' allegations about FirstEnergy allegedly destroying the valuation documents, and his assertion of a claim for "Injunction & Spoliation Remedy" do not take the dispute outside the scope of the Agreement. Were Francis a stranger to the Agreement, he would have no interest in what FirstEnergy did with respect to documentation about the Project Equipment. His interest in those documents is dependent upon and derivative of his contractual right to obtain a Residual Value Payment under the Agreement. Under the proper test, Francis could bring no cause of action against FirstEnergy, including any cause of action based upon FirstEnergy's alleged destruction of valuation documents, without invoking his contractual right to A Residual Value Payment under the Agreement. This dispute, therefore, falls within the scope of the Arbitration Clause.

### C. Summary

The Agreement states that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." (ECF No. 13 at 2, ECF No. 24 at 5; ECF No. 1-2 at 17 (Agreement § 6.5 (the "Arbitration Clause")).) Each of Francis'

claims explicitly depend upon his contractual right to obtain a Residual Value Payment under section 1.4 of the Agreement, and FirstEnergy's purported plans and schemes to ensure that he does not receive it. Such a dispute, regardless of the legal cause of action assigned to it, falls within the language of the arbitration agreement. Francis failed to make any showing that the Agreement, or its Arbitration Clause, is unconscionable. Francis' arguments with respect to why this dispute falls outside the scope of the Arbitration Clause lack merit. Arbitration must be compelled.

**IV.** <u>**Conclusion**</u>

For the foregoing reasons, FirstEnergy's motions to compel arbitration (ECF Nos. 12 and 23) must be granted. This case will be stayed, and administratively closed, pending resolution of arbitration. 9 U.S.C. § 3; <u>Lloyd v. Hovensa</u>, 369 F.3d 263, 270-71 (3d Cir. 2004). An appropriate order will be filed contemporaneously with this opinion.

Dated: August 13, 2015          BY THE COURT:

                                                 /s/ <u>*Joy Flowers Conti*</u>
                                                 Joy Flowers Conti
                                                 Chief United States District Judge